UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CV RESTORATION, LLC,

    Plaintiff,

v.                                                                Case No: 8:17-mc-00020-EAK-JSS

DIVERSIFIED SHAFTS SOLUTIONS,
LLC,

    Defendants.
_____/

## ORDER

THIS MATTER is before the Court on Plaintiff's Motion to Compel, For Sanctions, and For Order of Contempt ("Motion") (Dkt. 1), Short Block Technologies, Inc.'s response in opposition (Dkt. 9), and Plaintiff's reply (Dkt. 16). On May 11, 2017, the Court held a hearing on the Motion. For the reasons that follow, the Motion is denied.

## BACKGROUND

In the main case to which this miscellaneous proceeding relates, Plaintiff sues Defendant for breach of contract. *CV Restoration, LLC v. Diversified Shafts Solutions, Inc.*, Case No. 1:16-CV-02102-ELH (D. Md. June 14, 2016). Plaintiff and Defendant manufacture, market, and distribute axles and their related components for ATVs. Plaintiff and Defendant entered into agreements in which they formed a partnership to manufacture and sell ATV axles, splitting gross profits equally. Under their agreements, the parties must both approve potential customers before any sales are made. In its Complaint, Plaintiff alleges that Defendant, "through itself and through subsidiaries and/or other related entities, has sold at least 28,693 ATV axles to at least five (5) other domestic axle retailers, for which the profit due to [Plaintiff] under the Agreements has been

withheld by [Defendant]."  (Main Case Dkt. 1 ¶ 23.)  In the Motion, Plaintiff asserts that Ningbo V-Shine Auto Parts Company ("Ningbo") is one such affiliate through which Defendant sold axles to third parties.  (Dkt. 1 at 2.)  At the hearing, Plaintiff explained that Ningbo is an exclusive supplier of axles for Defendant, and Plaintiff contends that Ningbo sold Defendant's axles directly to third parties.

In the Motion, Plaintiff contends that Defendant and its affiliates sold axles to non-party Short Block Technologies, Inc. ("Short Block").  Plaintiff issued subpoenas to Short Block[1] to ascertain its damages from Defendant's alleged conduct, requesting production of information related to Short Block's purchase of axles covered by the agreements from Defendant or Ningbo. (Dkts. 1-3, 1-4.)

In response to the subpoenas, Short Block objected to producing documents that would reveal proprietary information to its competitors, Plaintiff and Defendant, but agreed to produce documents with unit pricing and item information redacted.  (Dkt. 1 at 3.)  The parties circulated a confidentiality agreement.  On January 11, 2017, Short Block produced documents to Plaintiff. Plaintiff contends the production was "utterly unresponsive" because the documents were heavily redacted, and further contends that Short Block did not produce documents containing confidential unit pricing information.  (Dkt. 1 at 4–5.)  Short Block produced wire transfer print-outs from Short Block's operating account, which show dates and amounts of outgoing wire transfers.  (Dkt. 1-15.)  At the hearing, Short Block's counsel confirmed that these documents showed wire transfers from a division of Short Block, 4XPro, to Ningbo, for Short Block's purchase of axles. From the Court's review, only the digits of Short Block's operating account number are redacted from the wire transfer print-outs.  (Dkt. 1-15.)

---

[1] Plaintiff issued subpoenas to entities that are divisions of Short Block, 4XPro and East Lake Axle.  (Dkts. 1-3, 1-4.)

In response to this production, Plaintiff's counsel wrote Short Block's counsel a letter in which Plaintiff's counsel contended that the production was incomplete because, although Short Block produced print-outs of wire transfers, it did not produce documents relating to those payments, such as invoices, purchase orders, or receipts. (Dkt. 1-11.) In response, Short Block stated that it would supplement its response to the subpoenas. (Dkt. 1-12.)

On January 30, 2017, Short Block produced redacted invoices from Ningbo to Short Block.[2] Short Block's counsel informed Plaintiff's counsel that Short Block had no other documents responsive to Plaintiff's subpoenas. (Dkt. 19.) At the hearing, Short Block's counsel stated that this production was made about a week after the confidentiality order had been entered by the court in the main case. The invoices are from Ningbo to Short Block and show the dates and total amounts of the invoices. (Dkt. 22.) Short Block redacted the part numbers, quantities, and unit prices from the invoices. (Dkt. 22.) At the hearing, Plaintiff contended that Short Block should be compelled to produce unredacted versions of these invoices. Specifically, Plaintiff contends the part numbers are needed to identify that it was in fact axles that were sold and invoiced to Short Block, and the quantity numbers and unit prices are needed to extrapolate the number of axles sold and, accordingly, Plaintiff's damages.

Plaintiff contends that while Plaintiff's counsel conferred with Short Block regarding these alleged deficiencies, Short Block's counsel stated there is correspondence relating to the transactions between Ningbo, but that it has not produced this correspondence because it is unresponsive. (Dkt. 1 at 6.) Plaintiff moves for an order (1) compelling Short Block to produce all responsive documents without redactions, (2) allowing Plaintiff's counsel to inspect and copy Short Block's books and records, (3) sanctioning Short Block, and (4) holding Short Block in

---

[2] These invoices were filed under seal. (Dkts. 22, 23.)

contempt. Plaintiff argues that such relief is warranted because Short Block delayed production of documents, did not produce the invoices until after receiving a letter from Plaintiff's counsel regarding its first production, redacted the production despite the confidentiality agreement, and withholds the correspondence relating to Short Block's payments to Ningbo. (Dkt. 1 at 9–10.) Further, Plaintiff argues that Short Block's production demonstrates that it withholds other responsive documents because "[t]he earliest invoice produced by [Short Block] is dated July 1, 2014 . . . while the earliest evidence of payment for goods is dated March 1, 2014." (Dkt. 1 at 10.)

In response, Short Block states that it has already produced all documents responsive to the subpoena—the wire transfer documents and the invoices, which show the total amounts it paid Ningbo for axles. (Dkt. 9 at 6.) Short Block contends that it should not be compelled to produce unredacted versions of its production because the redacted information is not relevant, and, to the extent the Court finds it relevant, Short Block requests a protective order prohibiting the disclosure of this information. (Dkt. 9 at 1.) In its response, Short Block has set forth in detail the ways in which it contends this information is proprietary and worthy of protection. (Dkt. 9; Dkt. 9-4.) In summary, Short Block contends that the quantities of axles and the unit prices of axles it purchased from Ningbo are a result of years of negotiations with Ningbo, which allows Short Block the market advantage of offering inexpensive axles. Further, the part numbers listed on the invoices are entitled to protection from disclosure, Short Block contends, because they represent Short Block's internal coding system for axles that it does not disseminate.

**APPLICABLE STANDARDS**

Courts maintain great discretion to regulate discovery. *Patterson v. U.S. Postal Serv.*, 901 F.2d 927, 929 (11th Cir. 1990). The court has broad discretion to compel or deny discovery. *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1306 (11th Cir. 2011). Through

discovery, parties may obtain materials that are within the scope of discovery, meaning they are nonprivileged and relevant to any party's claim or defense. Fed. R. Civ. P. 26(b)(1). "The former provision for discovery of relevant but inadmissible information that appears 'reasonably calculated to lead to the discovery of admissible evidence'" was removed from Federal Rule of Civil Procedure 26(b)(1), the rule governing the scope of discovery, when it was amended because "[t]he phrase has been used by some, incorrectly, to define the scope of discovery." Fed. R. Civ. P. 26(b) advisory committee's note to 2015 amendment. Discovery must also be "proportional to the needs of the case," which is determined by considering the following factors: (1) "the importance of the issues at stake in the action," (2) "the amount in controversy," (3) "the parties' relative access to relevant information," (4) "the parties' resources," (5) "the importance of the discovery in resolving the issues," and (6) "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1); *see McKenzie-Wharton v. United Airlines, Inc.*, No. 8:15-CV-114-T-17MAP, 2016 WL 7203808, at *1 (M.D. Fla. Apr. 19, 2016) ("Discovery under the Federal Rules is governed by the principle of proportionality.").

A protective order may be issued for good cause to protect a person from annoyance, embarrassment, oppression, or undue burden or expense, by "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G). Further, a court may quash a subpoena that requires "disclosing a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(B)(i). A trade secret consists of information, including a formula, pattern, compilation, program, device, method, technique, or process that: (a) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its

disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. § 688.002(4), Fla. Stat.

"[A] party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). If the motion to compel is granted, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). However, "the court must not order this payment if "the opposing party's nondisclosure, response, or objection was substantially justified," or there are "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(ii)–(iii).

## ANALYSIS

Upon consideration of the Motion, response, reply, and the parties' argument at the hearing, and after having reviewed Short Block's production, the Court finds that Short Block has complied with its obligations under the subpoenas and an order compelling Short Block to produce unredacted versions of its production is unwarranted. Although the total amounts third parties paid Defendant and its affiliates for axles is relevant to the measure of Plaintiff's claim for damages, the additional information Short Block redacted from its wire transfer documents and invoices is not. Thus, Plaintiff's argument that unredacted versions of Short Block's production should be produced pursuant to the confidentiality agreement is unavailing because this information is not relevant to Plaintiff's admitted purpose for such discovery—to "ascertain the full extent of its damages from [Defendant's] conduct." (Dkt. 1 at 2.)

Further, considering Short Block's interest in protecting its proprietary trade secrets, there is a good cause to protect Short Block's disclosure of the redacted information. *See* Fed. R. Civ.

P. 26(b)(1), 26(c)(1)(G), 45(d)(3)(B)(i).  The parties have explained that Short Block and Plaintiff are competitors in the business related to the distribution of axles and their related components for ATVs.  (See Dkt. 9-4.)  Short Block explained that it "has invested considerable resources in building its expertise in the procurement of parts from Asia," including from Ningbo.  (Dkt. 9 at 4.)  Short Block goes to great efforts to protect its pricing and ordering information, including using an internal coding system for the parts it buys and requiring its employees to execute non-disclosure agreements.  (Dkt. 9-4 ¶¶ 6, 8.)  Short Block has a legitimate interest in protecting the disclosure of its confidential pricing and ordering information because "[t]his information would obviously be important for a competitor in deciding by how much it could undercut [Short Block's] prices."  *See Thomas v. Alloy Fasteners, Inc.*, 664 So. 2d 59, 60 (Fla. 5th DCA 1995); *James, Hoyer, Newcomer, Smiljanich, & Yanchunis, P.A. v. Rodale, Inc.*, 41 So. 3d 386, 388 (Fla. 1st DCA 2010) (affirming the trial court's ruling that contracts, reports, and communications with and from suppliers and other vendors constitute trade secrets).

The Court also rejects Plaintiff's argument that Short Block should produce correspondence between Short Block and Ningbo relating to the wire transfer documents and invoices because Plaintiff's subpoenas request "any and all documents reflecting or evidencing" the purchase of axles from Defendant or its affiliates.  This language is not tailored to discovering information about the total amounts Short Block paid Defendant and/or its affiliates for axles, and thus is overly broad and not proportional to the needs of the case.

In sum, because Short Block has produced all documents showing the total amounts it paid Defendant or its affiliates, and because the redacted information Plaintiff seeks to compel is not relevant to its claim or proportional to the needs of the case, the Motion is denied.  With regard to Plaintiff's argument that Short Block must have other responsive documents—because Short

Block produced a document showing a March 2014 wire transfer to Ningbo, but the earliest Ningbo invoice Short Block produced was dated July 1, 2014—Short Block is reminded of its duty to supplement its production if it learns that its production was incomplete. Fed. R. Civ. P. 26(e)(1). Accordingly, it is

**ORDERED** that the Motion (Dkt. 1) is **DENIED**. The Clerk is directed to close this miscellaneous proceeding.

**DONE** and **ORDERED** in Tampa, Florida on May 16, 2017.

 _____
 JULIE S. SNEED
 UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record